FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 09, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT HARVEY EWING, JR., | No.2:17-CV-00169-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 16, 17. Attorney David L. Lybbert represents Robert Harvey Ewing, Jr. (Plaintiff); Special Assistant United States Attorney Ryan Ta Lu represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

## JURISDICTION

Plaintiff protectively filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on July 26, 2013, Tr. 130-31, alleging disability since January 1, 2008, Tr. 265, 274, due to bulging disks, right shoulder rotator cuff, carpel tunnel, obesity, right knee problems, and cellulitis, Tr. 305. The applications were denied initially and upon reconsideration. Tr. 171-86, 189-99. Administrative Law Judge (ALJ) Caroline Siderius held hearings on May 21, 2015 and November 5, 2015 and heard testimony from Plaintiff, medical experts, Richard Hutson, M.D. and Holland Neil Levine, M.D., and vocational expert, Kimberly Mullinax. Tr. 42-129. At the second hearing, Plaintiff agreed to amend his onset date to the date he was last insured for DIB, which was June 30, 2009. Tr. 120, 302. On December 30, 2015, Plaintiff again amended his date of onset to November 23, 2011. Tr. 297-300. The ALJ issued an unfavorable decision on January 27, 2016 dismissing the DIB claim based on the second amended onset date and finding Plaintiff failed to establish disability in the SSI claim. Tr. 20-35. The Appeals Council denied review on March 31, 2017. Tr. 1-6. The ALJ's January 27, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on May 22, 2017. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 49 years old at the amended date of onset. Tr. 265. He completed his GED in 1980. Tr. 306. He completed training in wildlife and conservation in 1995 and AUTOCAD in 1997. *Id.* His reported work history includes the jobs of crowd management, laborer, and truck driver. Tr. 306, 312.

Plaintiff reported that he stopped working on December 1, 2008 due to his conditions. Tr. 305.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This

burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).  If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On January 27, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 23, 2011, the alleged date of onset.  Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments:  degenerative disc disease – lumbar and cervical spine; degenerative joint disease – right shoulder, status post rotator cuff repair; carpal tunnel syndrome, status post release surgery; degenerative joint disease of both knees, status post total right knee arthroscopy; and morbid obesity.  Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 24.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> he could lift up to 30 pounds occasionally and 10 pounds frequently; he could carry up to 10 pounds occasionally; he could sit up to one hour at a time and six hours total in an eight-hour day; he could stand up to one hour at a time and two hours total in an eight-hour day; he could walk

up to one hour total; he could not ambulate on uneven surfaces; he should avoid unprotected heights, industrial vibration, and extreme cold; he could occasionally climb ramps or stairs but never ladders, ropes, or scaffolds; he could engage in occasional, but not repetitive, crouching, stooping, and bending; and he could not reach overhead with his right upper extremity.

Tr. 26. The ALJ identified Plaintiff's past relevant work as tractor operator and security guard and concluded that Plaintiff was not able to perform this past relevant work. Tr. 33.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of assembler (button and notion) and document preparer. Tr. 34. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 23, 2011, through the date of the ALJ's decision. Tr. 34-35.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to address all of Plaintiff's severe impairments at step two; (2) failing to properly weigh the opinion evidence; (3) failing to properly address Plaintiff's symptom statements; (4) failing to properly apply the grid rules; and (5) failing to make a proper step five determination.

## DISCUSSION

**1.  Step Two**

Plaintiff challenges the ALJ's step two determination by asserting that the ALJ failed to address the deep vein thrombosis (DVT) or chronic venous stasis, the carpal tunnel syndrome on the left, the degenerative joint disease on the left

shoulder, and the degenerative joint disease of the hip. ECF No. 16 at 5-6.

Step two of the sequential evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id*. at 1290. The step two analysis is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.

### A. DVT and Venous Stasis

Plaintiff challenged the ALJ's determination omitting his cardiovascular impairments, specifically DVT and venous stasis, from the step two determination. ECF No. 16 at 5, 7-8.

The medical expert at the second hearing, Dr. Levine, testified that "the records do reflect and document a venous insufficiency with a stasis dermatitis of the lower extremities and recent cellulites which would be the infection that was mentioned earlier so there is documentation of that. That really is not an orthopedic malady." Tr. 71. Dr. Levine went on to state that he was not a cardiovascular specialist, but that the claimant "may need a cardiovascular CE. It's possible that he could meet 4.11(A) or (B)." Tr. 83. However, Dr. Levine testified that he did not know how to deal with the medical evidence as compared to Plaintiff's reported activities in the record: "looking at the functionality of the activity level, it does not appear that that - - those things were significant, but with that there may well be a need to elevate at least that extremity from 10 to 15 minutes every hour or so." Tr. 83-84. He clarified that by elevation, he meant the foot higher than the knee and the knee higher than the hip. Tr. 90. Again he highlighted the need for additional information: "Perhaps a cardiovascular specialist would be, would be indicated but with the fact that at least as of

12/12/2014 he's still working weekends would against [*sic*.] suggest there's no at least objective findings in the medical record that suggest a need for evaluation." Tr. 84. Plaintiff then testified that he did not perform the activities Dr. Levine relied upon in his conclusion that the activity level was inconsistent with the medical evidence, i.e. working weekends, walking 25 miles, and lifting bales of hay. Tr. 84.

In her decision, the ALJ found Plaintiff's DVT and left lower extremity cellulitis resolved prior to the start of the relevant period:

> Philip Levine, M.D., the medical expert at the hearing testified that the record contained instances of deep vein thrombosis and dermatitis. He noted that the claimant might need to elevate his legs every hour for 15 minutes, but any evidence supporting such a limitation is dated prior to the relevant period. Further, Dr. Levine noted that any such limitation was outside his area of expertise. The medical evidence after November 23, 2011 does not include further cellulitis treatment or recommendations to keep the left leg elevated. Accordingly, the undersigned does not consider the claimant's cellulitis or deep vein thrombosis severe for the purposes of this decision."

Tr. 24.

In coming to her conclusion, the ALJ was accurate that there is the evidence regarding Plaintiff's DVT and the infection from the cellulitis that predate the November 23, 2011 amended onset date. See Tr. 24 citing Tr. 382 (December 22, 2010 diagnosis of left leg cellulitis); Tr. 396-97 (January 20, 2011 opinion that Plaintiff would need to keep his leg elevated throughout the workday and required long term antibiotics for his chronic cellulitis.). However, the ALJ erred in limiting her analysis of the medical record to just those two diagnoses and these two records.

First, Dr. Levine's testimony was actually regarding Plaintiff's venous insufficiency and not DVT. Tr. 71. In fact, Dr. Levine never referenced Plaintiff's DVT in his testimony. Therefore, the ALJ's statement that Dr. Levine provided

any testimony regarding limitations from DVT is a misrepresentation of the record.

Second, as Plaintiff identified in his briefing, ECF No. 16 at 8, when the medical evidence surrounding Plaintiff's cardiovascular symptoms is read as a whole, including the records of venous insufficiency, there are symptoms persisting after the November 23, 2011 amended onset date: On September 5, 2012, October 7, 2012, November 2, 2012, May 3, 2013, July 24, 2013, July 29, 2013, January 9, 2014 exams revealed venous stasis changes in the right lower extremity. Tr. 421, 428, 433, 441, 443, 456, 520. On January 26, 2014 Plaintiff was admitted to the emergency room due to right lower leg cellulitis where he has chronic venous stasis skin changes. Tr. 1737, 1786. By April 2, 2014, an exam showed venous stasis disease prominently in the right lower extremity but also present in the left lower extremity. Tr. 533. During exams on May 20, 2014, June 4, 2014, July 2, 2014, and August 5, 2014 the right lower extremity continued to show venous stasis changes. Tr. 558, 560, 562, 591. By August 21, 2014, it was noted that his venous insufficiency was delaying his healing from other procedures and he was encouraged to elevate his leg. Tr. 593. By February 25, 2015 an exam found venous stasis disease present in both lower extremities. Tr. 605. On December 2, 2015 Plaintiff had bilateral cellulitis and presented with edema. Tr. 1848-49. Additionally, Plaintiff presented with edema in his lower extremity repeatedly during the relevant time period. Tr. 694, 727, 959, 1102, 1136, 1308, 1318, 1341, 1729, 1791.

The ALJ commits error by failing to look at the cardiovascular system as a whole throughout the record. Instead, she isolates DVT and cellulitis to the exclusion of the evidence surrounding venous insufficiency, which was actually the subject of Dr. Levine's testimony. As discussed above, there is evidence of venous insufficiency throughout the relevant time period. Furthermore, Dr. Levine testified that this was beyond his expertise and a cardiovascular expert may be necessary. Tr. 83.

1    Therefore, the ALJ's determination that there was no treatment for cellulitis
2    after the November 23, 2011 onset date is not supported by substantial evidence,
3    and the rejection of all cardiovascular symptoms at step two was an error. This
4    error resulted in Plaintiff's residual functional capacity determination being void of
5    consideration of symptoms and resulting limitations from an entire body system.
6    The vocational expert testified that limitations consistent with Dr. Levine's opinion
7    that Plaintiff would be required to elevate his legs so that his foot was above his
8    hip due to his cardiovascular impairments would require an accommodation from
9    an employer. Tr. 126. Therefore, leaving out these impairments constitutes
10   harmful error. As requested by Plaintiff, the case is remanded to develop the
11   record pertaining to Plaintiff's cardiovascular impairments. ECF No. 16 at 9. The
12   ALJ will send Plaintiff for a cardiovascular consultative examination and, if
13   necessary, take testimony from a cardiovascular expert at remand proceedings
14   regarding functional limitations resulting from Plaintiff's cardiovascular
15   impairments including the need to elevate his lower extremities.

### B. Bilateral Carpal Tunnel

Plaintiff argues that the ALJ failed to attribute Plaintiff's carpal tunnel syndrome to both upper extremities. ECF No. 16 at 5. Defendant asserts that the ALJ did not error because her step two determination did not limit Plaintiff's carpal tunnel syndrome to just one extremity. ECF No. 17 at 8. Defendant is accurate that the ALJ did not limit the carpal tunnel syndrome to one specific side. Tr. 21. However, for the sake of clarity, upon remand, the ALJ will address specifically whether her findings regarding carpal tunnel syndrome are bilateral or limited to a specific side.

### C. Degenerative Joint Disease – Left Shoulder

Plaintiff argues that the ALJ erred by failing to find his degenerative joint disease in the left shoulder severe. ECF No. 16 at 15, 10. The ALJ's discussion at step two includes an entire paragraph regarding the right shoulder impairment with

only a single mention of the left shoulder: "Leona Hays, ARNP, a nurse specializing in orthopedics, examined him in April 2013 and diagnosed him with bilateral degenerative joint disease symptomatically affecting the right greater than left." Tr. 23.

There is evidence of a bilateral shoulder impingement from 2012. *See* Tr. 406 (a diagnosis by Leona Hays, ARNP). Daniel Canfield diagnosed Plaintiff with bilateral shoulder rotator cuff impingement in July 2013 citing an MRI showing arthrosis in the left shoulder. Tr. 425. Therefore, the ALJ's failure to discuss the left shoulder impairment in depth at step two is an error. Upon remand, the ALJ will address Plaintiff's left shoulder at step two.

### D. Degenerative Joint Disease – Hip

While Plaintiff alleges that the ALJ failed to consider his degenerative joint disease of the hip, ECF No. 16 at 5, he did not present evidence in his briefing to support his assertion that this is a severe impairment, *Id*. at 5-11. However, since the case is being remanded for a new step two determination, the ALJ will consider whether the medical evidence supports a finding of a medically determinable impairment of the hips and if that impairment is severe.

### 2. Opinion Evidence

Plaintiff argues that the ALJ failed to properly consider and weigh the opinion of Ben Murrell, PAC and that his opinion supports a less than sedentary residual functional capacity determination. ECF No. 16 at 12-13.

Plaintiff submitted Mr. Murrell's opinion to the Appeals Council, Tr. 4, meaning the opinion was not part of the file before the ALJ at the time of her opinion. The administrative record before the district court includes evidence submitted to and considered for the first time by the Appeals Council. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012). Since it is now a part of the administrative record, the ALJ will address this opinion on remand.

Additionally, Plaintiff challenges the ALJ's rejection of Dr. Levine's opinion that Plaintiff would need to elevate his lower extremities throughout the day. ECF No. 16 at 16-17. As addressed at length above, the case is being remanded for the ALJ to properly address Plaintiff's cardiovascular impairments and their resulting limitations. This would require the ALJ to readdress Dr. Levine's statements on remand.

### 3. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were not entirely credible. ECF No. 16 at 13-14, 17-22.

A new residual functional capacity determination will be necessary in light of the ALJ's error at step two and the new opinion evidence in the administrative record. A residual functional capacity determination requires the ALJ to address the reliability of Plaintiff's symptom statements. S.S.R. 16-3p. Therefore, upon remand the ALJ will readdress the consistency of Plaintiff's symptom statements with medical evidence and other evidence in the record in accord with S.S.R. 16-3p.

### 4. Grid Rules

Plaintiff asserts that the ALJ erred by failing to apply grid rule 201.10 at step five. ECF No. 16 at 11-12.

The grids are an administrative tool on which the Commissioner must rely when considering claimants with substantially equivalent levels of impairment. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). The Ninth Circuit has recognized that significant non-exertional impairments may make reliance on the grids inappropriate. *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 577 (9th Cir. 1988). The fact that a non-exertional limitation has been alleged does not automatically preclude the application of the grids. *Id*. "The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id*.

Here, the ALJ found Plaintiff capable of a limited range of light work with some non-exertional limitations. Tr. 26. At step five, the ALJ considered grid rules 202.21 and 202.14 and stated that she took testimony from a vocational expert to determine the extent to which the nonexertional limitations eroded the unskilled light occupational base. Tr. 34.

Rule 202.21 addresses a light residual functional capacity with a high school diploma or more and skilled or semiskilled previous work experience with no transferable skills. 20 C.F.R. Part 404, Subpart P, Appendix 2. Rule 202.14 addresses a light residual functional capacity with a high school diploma or more and unskilled or no previous work experience. *Id.* Both of these rules result in a finding of "not disabled." *Id.* Rule 201.10, which Plaintiff argues should have been applied, addresses a sedentary residual functional capacity with a limited education, with skilled or semiskilled previous work but skills that are not transferable. *Id.* Application of this rule results in a finding of "disabled." *Id.* However, as address above, the ALJ found Plaintiff capable of a light residual functional capacity determination. Tr. 26. Therefore, based on the residual functional capacity determination in the ALJ's decision the application of Rule 201.10 would have been inappropriate.

This case is being remanded for the ALJ to make a new step two determination and consider the new opinion evidence, which means a new residual functional capacity determination will be necessary. The ALJ will then address the grids at step five and apply the rule that corresponds with the new residual functional capacity determination.

**5.     Step Five**

Plaintiff argues that the ALJ's step five determination was rendered invalid by his error at step two resulting in an inaccurate residual functional capacity determination. ECF No. 16 at 14-15. The case is being remanded for a new step two determination and the consideration of new opinion evidence. The ALJ will

also make a new step five determination upon remand.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to address all Plaintiff's severe impairments at step two, address the opinion evidence in the file, form a new residual functional capacity determination to include a consideration of Plaintiff's symptom statements, and make a new step five determination. The ALJ will supplement the record with any outstanding evidence, send Plaintiff for a cardiovascular consultative examination, and, if necessary, call a cardiovascular expert to testify at remand proceedings.

//

# CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED May 9, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE